**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4603

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCELLUS THOMAS,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, Jr., District Judge. (1:08-cr-00003-WO-1)

Argued: May 12, 2010                    Decided: August 6, 2010

Before TRAXLER, Chief Judge, MOTZ, Circuit Judge, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished opinion. Senior Judge Alarcón wrote the opinion, in which Chief Judge Traxler and Judge Motz joined.

**ARGUED:** Eugene Ernest Lester, III, SHARPLESS & STAVOLA, PA, Greensboro, North Carolina, for Appellant. Harry L. Hobgood, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

ALARCÓN, Senior Circuit Judge:

Marcellus Thomas appeals from the judgment entered following his conviction by a jury of twelve counts of violating 26 U.S.C. § 7206(2) by aiding and assisting in the preparation of false federal income tax returns. He seeks reversal on the ground that the district court violated his Sixth Amendment right to represent himself at his trial despite his timely, voluntary, knowing, intelligent, and unequivocal request to do so. We affirm because we conclude that the district court did not err in denying Thomas's motion to represent himself on the grounds that it was manipulative, and not clear and unequivocal. We also determine that his request was made to delay, obstruct, and hinder the timely disposition of this case.

I

Thomas was indicted on January 28, 2008. When he appeared for arraignment on February 2, 2008, attorney David Smith made a limited appearance on behalf of Thomas. Arraignment was set for February 7, 2008.

On February 5, 2008, William S. Trinette of the Federal Defender's Office, was appointed to represent Thomas. On February 7, 2008, Thomas entered a not guilty plea to all the charges in the indictment. The district court ordered that a trial by jury be set for March 10, 2008.

2

On March 3, 2008, Assistant Public Defender Trinette filed a motion to withdraw as counsel. He explained that withdrawal was required because of a conflict of interest arising from the fact that an investigator for the Federal Defender's Office was related to one of the persons listed in the indictment.

Attorney Brian Gates was appointed to represent Thomas on March 13, 2008. On April 10, 2008, Thomas filed a pro se motion for the substitution of counsel. He complained that Mr. Gates urged him to plead guilty, had only met him once, did not request that the court appoint an investigator, and had no experience in trying an income tax case. On April 16, 2008, Thomas filed a pro se motion to continue the trial date. On April 17, 2008, the district court scheduled the trial date for April 23, 2008. During the status hearing on April 17, 2008, Thomas stated: "If I'm not satisfied with [Mr. Gates'] services, can I just after the discussion come back and move the Court that I represent myself." The district court responded: "You clearly have the right to represent yourself." The district court denied the motion to substitute counsel.

On April 21, 2008, Thomas filed another pro se motion for the appointment of substitute counsel. On that date, the district court granted this request. On April 24, 2008, attorney Robert A. Broadie was appointed to represent Thomas.

Thomas filed numerous pro se motions after Mr. Broadie was appointed to represent him. At a May 8, 2008, status hearing, the district court stated to Thomas:

> Now if you continue to persist in making your own motions to the Court outside or separate from the advice of counsel that Mr. Broadie has rendered, or if you want to proceed pro se, then we'll have a separate hearing to determine whether or not you want to proceed with counsel or you want to represent yourself.

Thomas replied: "I understand that. I would respect the Court and Your Honor not to assume that I appreciate the services of my attorney".

The Court then inquired: "Are you satisfied with the services of Mr. Broadie?"

Thomas responded: "At this time I am, Your Honor."

On May 28, 2008, Thomas filed a pro se motion to continue the trial date. The district court denied all outstanding pro se motions at a status conference held on May 30, 2008, including Thomas's pro se motion to continue the trial date. The date for jury selection and trial was again ordered to commence on June 2, 2008.

On June 1, 2008, Mr. Broadie filed a motion to withdraw as Thomas' trial counsel. On June 2, 2008, Thomas filed a pro se motion for the appointment of substitute counsel.

4

On June 2, 2008, the district court conducted a hearing, before the scheduled commencement of jury selection, to consider Thomas's motion to stay the trial of this matter until Thomas's appeal to the Fourth Circuit, filed on May 30, 2008, was determined by this Court. In his interlocutory appeal, Thomas sought review of the May 30, 2008 denial of (1) his motion to dismiss the indictment, (2) the denial of his motion to continue the trial date, (3) the denial of his motion to suppress evidence, and (4) his motion that Judge William L. Osteen, Jr., recuse himself from presiding over the trial.

After hearing Thomas's argument in support of his motion for a stay, the district court denied the motion. It concluded that it was not divested of jurisdiction because it had not entered a final judgment in this matter.

Thomas then requested a three-day stay "to discuss with my new counsel on the matter." The district court denied the motion.

The district court then noted that Mr. Broadie filed a motion to withdraw as Thomas's counsel on Sunday, June 1, 2008 at approximately 10:00 p.m. Mr. Broadie informed the district court that he filed the motion after Thomas told him he had "concerns with me representing him further in this trial."

In his pro se substitution of counsel motion, Thomas asserted that Mr. Broadie's representation was inadequate. He

5

informed the district court "me and my attorney have not met, which is in the record, to even discuss any theories of trial." He also asserted that Mr. Broadie had failed to request funds for the appointment of a tax expert. Thomas further complained that Mr. Broadie had never tried a tax case. Thomas stated: "I ask the court on the record in the right of trial fairness and my rights under the constitution to (sic) the Sixth Amendment to have an effective and adequate counsel."

At the request of the district court for a response, Mr. Broadie stated that he had had numerous phone calls with his client. He had also set aside the preceding Wednesday, Thursday, and Friday, as well as the whole weekend, to meet with Thomas in preparation for trial. Thomas did not meet with Mr. Broadie, however, until Sunday. On that day, instead of discussing defense theories, Thomas focused on their difference of opinion as to "the matters of law that he wanted to proceed upon and the various motions he wanted to file." The district court denied the motion for a substitution of counsel.

Thomas was then permitted to make a further statement of his position. He stated that "At this moment, Your Honor, we're not ready for trial... I don't – at this time, Your Honor, I don't have adequate representation. That's why I moved to get new counsel, Your Honor. Or in the interests of justice, possibly a Motion to Continue, that I could have a right to

6

discuss the factual elements with my attorney so I can have a fair trial." The district court treated Thomas's request as a motion for reconsideration of its earlier ruling denying the motion for a substitution of counsel. In response, Thomas stated that he felt that Judge Osteen's decision was biased. Thomas then stated: "And let the record show that the defendant does not choose to proceed with Mr. Broadie as his attorney."

The district court advised the parties it was going to take a ten minute recess "to allow Mr. Broadie and Mr. Thomas an opportunity to have whatever further discussions they want to have, in view of the court's denial of the Motion to Appoint Substitute Counsel in this matter."

During the recess, Thomas served two documents on the district court in which he requested a stay of further proceedings, and a notice of appeal based on the denial of his motion to substitute counsel. The district court denied the motion for a stay.

The district court then inquired of Mr. Broadie whether "Mr. Thomas wants to proceed with counsel, or does Mr. Thomas want to be heard on which he alluded to, that is, proceeding pro se in this matter?" Mr. Broadie replied: "I can assert to the court that I've been advised that that will be his position, to proceed pro se, but I will tender Mr. Thomas to make sure that

the court had adequate understanding of his position, because that is the very reason I filed this motion."

Thomas requested that the district court rule on Mr. Broadie's motion to withdraw as his attorney. The district court replied: "All right. Mr. Broadie's Motion to Withdraw is denied. Now, how do you want to proceed? Mr. Thomas, do you want to be heard on the Motion to Proceed in Pro Se?" (Thomas replied, "Not at this time, Your Honor. I will hold my right, that's my right under the constitution to represent myself. If I want to go pro se anytime in this proceeding, and right now –– and I would right now hold my right to that."

In response, the district court summarized its findings as follows:

1. Thomas's pro se motion to substitute counsel was not timely filed. It was filed on 8:30 a.m. on the date that jury selection was scheduled to begin.

2. The untimeliness of the motion "casts some doubt of the defendant's motives in filing the Motion to Substitute Counsel; that is with respect to attempts to obstruct, hinder and delay the trial that is scheduled in this matter."

3. "The court does not find that conflict is so great between attorney and [client] that it has resulted

8

in a total lack of communication, preventing an adequate defense based on what's been described in this court during the course of these proceedings.

4. Any failure to communicate arises from Thomas's "desire to proceed ahead on legal arguments that the defendant desires to make."

Based on these findings, the district court denied Mr. Broadie's motion to withdraw as counsel. Thomas then stated:

> I would like to be -- have -- a motion be heard at a further time with respect to proceeding pro se and would respectfully request the court to grant me I would say a week to review my options and either proceed pro se or even try to hire a new attorney in light of my appeal."

The district court denied the motion. It noted that the indictment had been pending in this case since January 28, 2008.

The district court then proceeded to discuss Thomas's suppression motion and the proposed instructions to the jury with counsel. Thomas then made an oral motion to proceed in pro se. The district court stated:

> [Y]our motion is denied at this point. Having just told me 30 or 40 minutes ago that you wanted to keep Mr. Broadie as your counsel, to now turn around after what's transpired in this courtroom since I've returned and make a Motion to Proceed Pro Se, just is nothing more than to delay these proceedings.

9

The district court advised Thomas that it would hear from him again on his motion to proceed pro se after concluding the hearing with counsel on the suppression motion and the proposed jury instructions.

After the district court had concluded its conference with counsel, it inquired of Thomas whether he wanted to continue being represented by Mr. Broadie. Thomas responded that because Mr. Broadie did not have experience regarding tax law and the Internal Revenue Code, and had not conferred with him about the trial exhibits, or discussed his defense, he wished to represent himself at trial. He requested that he be granted "a considerable amount of time to, on my own, hire or get tax experts and any witnesses or experts that would help me avail myself of a proper and good defense in this matter." (R.T. at 100.) The district court denied the motion to continue the trial. It then inquired of Thomas whether he wished to proceed pro se in view of the fact that his motion for a continuance had been denied. Thomas responded that he wished to proceed pro se. Thomas also stated, however, that if the Court of Appeals granted his appeal from the denial of his motion for substitution of counsel, he wanted to be represented by counsel at trial. Thereupon, the district court conducted an evidentiary hearing to determine whether Thomas's motion to represent himself should be granted.

10

Thomas was placed under oath and was questioned by the district court. Thomas testified that he had not been treated recently for mental illness, or addiction to narcotics.

Thomas testified that he was aware that he was charged with thirteen counts of violating 26 U.S.C. § 7206(2), and the maximum possible penalties that could be imposed if he were to be convicted of these crimes. Thomas also admitted that he had not met with Mr. Broadie on Wednesday, Thursday, Friday, Saturday, and Sunday, the days his appointed counsel had made available to concur with his client because he had car trouble, and was involved in filing pro se legal motions. Thomas also conceded that he filed pro se motions to continue the trial and filed motions in the Court of Appeal to stay the trial pending the determination of these appeals. He stated that he had filed a notice of appeal that date and had requested a stay of the district court's proceedings. Thomas also admitted that he had informed the district court, during earlier proceedings on that date, that he wished to proceed represented by Mr. Broadie roughly an hour and one-half earlier on June 2, 2008. (R.T. at 108.) Thomas further conceded he had changed his mind again about requesting self-representation.

In addition, he admitted that he had made a motion to continue the trial fifteen minutes earlier. In response to the district court's inquiry, Thomas also stated he understood that

11

if he proceeded to represent himself, he would have to conduct voir dire, make the opening statement, and conduct his examination of witnesses in accordance with the rules of evidence. Thomas also acknowledged that he was not familiar with the tax laws.

The district court denied Thomas's motion to represent himself because it was not clear and unequivocal. It also found that it was untimely.

The district court explained that whether Thomas's motion to represent himself was knowing, intelligent, and voluntary was of "significant" concern because of Thomas's vacillation in asserting his right to self-representation. The Court opined that Thomas's conduct exhibited manipulation and efforts to delay, obstruct and hinder the orderly disposition of this case. The district court denied Thomas's motion to proceed pro se because it concluded that his motion to proceed pro se was being "used as a tactic to delay and disrupt the trial and distort the system and manipulate the trial process."

Thomas was found guilty of Counts 2 through 13 of the indictment. Thomas was sentenced to serve fifty-six months of imprisonment and ordered to pay restitution in the amount of $19,812. On October 22, 2008, Thomas filed a timely Notice of Appeal. This Court had jurisdiction pursuant to 28 U.S.C. § 1291.

Thomas has presented the following issue for review in this appeal:  "Did the trial court violate Mr. Thomas's Sixth Amendment right to proceed at trial without the assistance of counsel when it forced appointed counsel upon him despite his timely, voluntary, knowing, and intelligent requests to represent himself?"  (Appellant's Opening Br. at 1.)  "We review a district court's denial of a defendant's right to self-representation de novo."  United States v. Bush, 404 F.3d 263, 270 (4th Cir. 2005)(citing United States v. Singleton, 107 F.3d 1091, 1996 (4th cir. 1997).  "We review the district court's findings of historical fact for clear error."  Id. (citing United States v. Flackovich, 209 F.3d 1227, 1236 (10th Cir. 2000).

Citing Faretta v. California, 422 U.S. 806 (1975) and 28 U.S.C. § 1654, Thomas argues that "[a] defendant in a criminal case has both a statutory and constitutional right to proceed without the assistance of counsel."*  (Appellant's Opening Br. at 8.)  He contends that the trial court's denial of

---

* Section 1645 reads as follows:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively are permitted to manage and conduct cases therein."

his motion to dismiss appointed counsel to represent himself" defeat[ed] the absolute right of a mentally competent defendant to dismiss appointed counsel and conduct his own defense." (Appellant's Opening Br. at 13.) We disagree. Faretta did not create an "absolute right" to self-representation to mentally competent defendants who knowingly and intelligently waive their right to counsel. In fact, in Bush, this Court expressly held that the Faretta right to self-representation is not absolute. Id.

In Bush, this Court set forth the circumstances that justify the denial of a mentally competent defendant's motion for self-representation:

> In determining whether a defendant properly has exercised his right to self-representation and waiving his right to counsel, we ascertain whether the assertion of the right to self-representation is (1) clear and unequivocal, (2) knowing, intelligent and voluntary; and (3) timely. The requirement that the assertion be clear and unequivocal is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings, and it also prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation. Addi-tionally, in ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a constitutional primacy to the right to counsel. At bottom, the *Faretta* right to self-representation is not absolute and the government's interest in ensuring the integrity and efficiency of the trial outweighs the defendant's interest in acting as his own instant lawyer. (emphasis added).

14

<u>Bush</u>, 404 F.3d at 271. (internal citations and quotation marks omitted).

A

Thomas's pro se motion for a substitution of counsel and a stay of further proceedings was filed on the morning set for trial. In <u>United States v. Reevey</u>, 364 F.3d 151 (4th Cir. 2004), this Court held that "a continuance request for the substitution of counsel made on the first day of trial is clearly 'untimely under all but the most exigent circumstances'." <u>Id.</u> at 157. (quoting <u>United States v. Corporan-Cuevas</u>, 35 F.3d 953, 956 (4th Cir. 1994)). Thomas has failed to identify any exigent circumstances that demonstrate that his request for a substitution of counsel and a continuance of his trial was timely. He had asserted the same reasons for his dissatisfaction with Mr. Broadie several times previously. Thomas's assertion that Mr. Broadie was not prepared for trial because he had not conferred with Thomas was contrary to the undisputed fact that he failed to meet with his counsel on the days Mr. Broadie made himself available to discuss Thomas's defense.

"We review for abuse of discretion a district court's rulings on a motion to substitute counsel and on a request for a continuance." <u>Reevey</u>, 364 F.3d at 156. The district court did

15

not abuse its discretion in denying Thomas's motion for a substitution of counsel and a continuance.

B

Thomas's motion to proceed in pro se was asserted for the first time on the date set for trial. The district court advised him on April 17, 2008, that he had a right to represent himself. On May 8, 2008, Thomas informed the district court that he was satisfied with Mr. Broadie's representation. At the May 30, 2008, status conference, Thomas did not indicate that he desired to represent himself.

In United States v. Lawrence, 605 F.2d 1321 (4th Cir. 1979), this Court held that the right of self-representation must be asserted at some time "before meaningful trial proceedings have commenced, and that thereafter its exercise rests with the sound discretion of the trial court." Id. at 1325. Thomas's motion to represent himself was not made before meaningful trial proceedings had commenced. It was asserted on the day of trial after the district court considered *in limine* motions and had conferred with counsel about the instructions that should be addressed to the prospective jurors.

Thomas contends that "[d]efendants are allowed to assert their right to self-representation anytime before trial or before the jury is empanelled." (Appellant's Opening Br. at 17.) Thomas cites McKaskle v. Wiggins, 465 U.S. 168 (1984) in

16

support of this proposition. No issue was raised in McKaskle regarding whether the assertion of a motion for self-representation can be asserted anytime before trial or the jury is empanelled. The sole issue raised in McKaskle was "what role standby counsel who is present at trial over the defendant's objection may play consistent with the protection of defendant's Faretta rights." McKaskle, 465 U.S. at 170.

Our research has not disclosed an opinion of this Court that has expressly considered whether the denial of a motion for self-representation as untimely that was filed on the date set for trial, but prior to jury selection, is erroneous. In Lawrence, this Court stated that "[w]hen 'meaningful trial proceedings have commenced' will of course vary from case to case.'" Lawrence, 605 F.2d at 1325. In that matter, this Court held that the defendant's motion was untimely when the jury had been selected but had not yet been sworn. Id. We need not decide in this case whether the filing of a motion for self-representation on the date set for trial, but before jury selection has commenced is timely because we are persuaded that the district court did not clearly err in finding that Thomas's request to represent himself was manipulative to delay and obstruct the orderly disposition of this case, and therefore, was not clear and unequivocal.

17

Thomas argues that the district court clearly erred in finding that his purported waiver of counsel was not knowing, intelligent, voluntary, and clear and unequivocal. The district court found that Thomas "vacillated back and forth at least a couple of times over the past two hours."

It is undisputed that Thomas was mentally competent to make a knowing, intelligent, and voluntary waiver of his right to counsel. The district court placed Thomas under oath and inquired whether he was addicted to drugs or suffered from mental illness. Thomas also testified that he was aware of the charges against him, the maximum penalties and the fact that he had to conduct his voir dire of the jury, present an opening statement, and examine witnesses in accordance with the rules of evidence.

After the district court denied his motion to represent himself, Thomas filed another interlocutory appeal before this Circuit. After the jury selection proceedings had commenced, Thomas stated: "I would like to have a motion to get time to get a new attorney at my own expense. Will Your Honor entertain me doing that." In denying this motion, the district court stated: "You've had since January to find your own counsel and you, for whatever reason, have not done that." Thomas responded: "But for the record, I would like to have a motion

18

to dismiss my attorney and have time to get another lawyer." This motion again cast doubt on whether his earlier request that he be granted the right to represent himself was unequivocal. It was yet another belated attempt to delay his trial.

CONCLUSION

The record supports the district court's determination that Thomas's request to represent himself was not clear and unequivocal. On the eve of the original April 10, 2008, trial date, Thomas asked to have Mr. Gates removed and replaced with new counsel because he disagreed with Thomas as to how to prepare for trial. At a hearing on April 16, 2008, Mr. Gates informed the court that he would not "engage in tactics that I think are unwise or ill-conceived." After the district court granted the request and appointed Mr. Broadie, Thomas continued filing *pro se* motions even though he was represented by counsel. On the eve of trial, Thomas again sought to substitute counsel, or in the alternative, to represent himself, raising the same arguments he made when he sought substitute counsel for Mr. Gates, *i.e.*, that Mr. Broadie had not met with him sufficiently to discuss the evidence in the case; that Mr. Broadie lacked sufficient experience in tax trials; and, that Mr. Broadie had failed to engage a tax expert. When questioned by the district court at the hearing on the morning

19

jury selection was to begin, Thomas admitted he was not ready for trial and asked for a continuance to "to review [his] options." The record clearly demonstrates that Thomas's request to represent himself was a manipulative effort to present particular arguments rather than a sincere desire to dispense with Mr. Broadie's services. See United States v. Frazier-El, 204 F.3d 553, 560 (4th Cir. 2000)("A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel.")

Thomas argues that his request was "conditional," not "equivocal," because he wanted to represent himself only if he could not get substitute counsel appointed. (Appellant's Opening Br. at 14-15.) Thomas's argument misses the mark. The district court did not conclude that his request was unequivocal merely because he made it "in the alternative" to getting new counsel. As the district court noted, within the span of a few hours at the hearing on the morning of June 2, 2008, Thomas changed his mind several times as to whether he wanted to keep his counsel or proceed *pro se* and represent himself, subject to the granting of an order granting him a continuance. It was this vacillation that constituted the lack of clarity and equivocation, not the framing of the request "in the

alternative," which led the district court to conclude that the request was not unequivocal.

"In ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only individual interests served by protecting the right of self-representation."  Frazier-El, 204 F.3d at 559 (quoting Singleton, 107 F.3d at 1102.)  The district court did not err in denying Thomas's request to represent himself on the ground that his request was not clear and unequivocal.

Accordingly, we affirm.

AFFIRMED

21